[No. A084038. First Dist., Div. Four. Apr. 26, 2000.]

DUGGAN'S FUNERAL SERVICE, INC., Plaintiff, Cross-defendant and Appellant, v.
DUGGAN'S SERRA MORTUARY, INC., Defendant, Cross-complainant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Parts II.A.3. through II.C. of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b), 976.1.)

## COUNSEL

Bryan, Hinshaw & Barnet, John P. Sutton and Richard M. Bryan for Plaintiff, Cross-defendant and Appellant.

Townsend and Townsend and Crew, Mark T. Jansen, John A. Hughes and William T. Gallagher for Defendant, Cross-complainant and Respondent.

## OPINION

**REARDON, J.**—This is an appeal from summary judgment entered in a trademark infringement and unfair competition case involving funeral businesses owned and operated by relatives of William Duggan, founder of appellant Duggan's Funeral Service, Inc. (DFS). We affirm the judgment in favor of respondent Duggan's Serra Mortuary, Inc. (Serra) as well as the award of attorney fees, as modified.

### I. FACTS

#### A. *History of the Two Companies*

The history of the family funeral business dates back to the 1880's when James Hagen began providing funeral services in the San Francisco area. William Duggan started working for Hagen in 1903 and married his daughter, Henrietta, the next year. In 1929 William Duggan began using the name "Duggan's Funeral Service" for his own business on Valencia Street in San Francisco. DFS moved to 17th Street in 1934 and has remained there ever since.

William and Henrietta had several children, including Edwin (Bud) and Letitia. Bud worked for DFS, eventually becoming president. In 1963 Bud

founded Serra in Daly City. The Board of Directors of DFS terminated Bud's employment that year. Bud's sister, Letitia Welch, took over the business and ran it until her death in 1977. At that time her son, William Welch, became president of DFS.

In 1963 the then constituted State Board of Funeral Directors and Embalmers (Board)[1] licensed Serra under the name "Duggan's Serra Mortuary." Serra has operated and advertised under the name "Duggan's Serra Mortuary" since its inception. DFS has known of the use of this name, and has been familiar with Serra's various telephone book advertisements, since Serra's inception.

As can be expected, conflicts arose within the Duggan family related to that critical juncture in 1963 when Bud Duggan split off from DFS and started his own mortuary business. At a special meeting convened in May 1963, the DFS Board of Directors[2] agreed (1) to set up an arbitration board "to decide differences between various factions in the corporation"; (2) that all telephone calls coming to DFS regarding a death would be considered DFS business, "no matter to whom the call was directed"; and (3) copies of all proposed classified ads by DFS and Serra would be submitted to the arbitration board "immediately, for decision."

Three outsiders were appointed to the arbitration board, including O'Gara, DFS's attorney at the time, and Clecak, Bud Duggan's attorney. In June 1963 O'Gara wrote to Bud Duggan: "At a recent meeting of the Board of Directors in connection with the Duggan sign which you acquired from the Duggan's Funeral Service, you will recall that you agreed to immediately alter this sign to show that the name of your establishment was not 'Duggan's' as the sign indicates, but Duggan's Serra Mortuary. . . . [¶] The

---

[1]Prior to 1998, the Funeral Directors and Embalmers Law (Bus. & Prof. Code, § 7600 et seq.) provided for a five-member Board, situated within the Department of Consumer Affairs, with regulatory responsibility for the funeral industry, including the licensing of funeral directors. (See, e.g., id. at former § 7601, as amended by Stats. 1994, ch. 908, § 53, repealed by its own terms Jan. 1, 1998; former § 7606, as amended by Stats. 1957, ch. 2084, § 22, p. 3705; former § 7619.2, as enacted by Stats. 1996, ch. 1151, § 7.) In 1998 the Board was eliminated and its responsibilities were vested in the Funeral Directors and Embalmers Program (Program), under the supervision and control of the Director of the Department of Consumer Affairs. (Stats. 1998, ch. 970, §§ 21-42, 47-64, 67-71, 80-82, 85-91, 92-93.)

Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[2]All members sitting on the DFS board in 1963, including Attorneys James O'Gara, Jr., and William Clecak, are now deceased. Moreover, some of the minutes for regular monthly board meetings of DFS covering the key period in 1963, including those for June, August and September, were apparently lost or misplaced. In addition, although meetings were tape-recorded, the pertinent tapes were not located.

Duggan's Funeral Service name and the use of the word 'Duggan's' connected therewith, are an important asset of the Duggan's Funeral Service corporation. . . . [A]t the next Board of Directors meeting, the Board is going to consider the question of taking legal steps . . . to prevent continued confusion in the eyes of the public of the use of the word 'Duggan's' alone in your Duggan's Serra Mortuary operation."

In July 1963 O'Gara proceeded to review telephone directory ads and listings for both companies. In correspondence to Letitia Welch, O'Gara suggested that there should be a meeting to make agreed revisions "so that there will be no confusion in the minds of the readers . . . that the Duggan's Serra Mortuary is owned by Mr. and Mrs. Edwin J. Duggan, and that the Duggan's Funeral Service is a separate entity." Thereafter O'Gara forwarded to the telephone company the ad and listing copy that DFS and Serra would run. Each ad and listing used the name "Duggan's." The letter enclosing the Serra ad copy stated: "We are sending this at the direction of Edwin J. (Bud) Duggan, President, since we are coordinating his listing with the listing of Duggan's Funeral Service."

In his deposition, William Welch stated that although immediate family members expressed dissatisfaction with Bud for using the Duggan name in his business, no action was taken by the DFS board to prohibit the use because the controlling interest at the time rested outside the family.

B. *1993 Dispute*

In 1993 Steven Welch, son of William Welch, tried to open a mortuary operation in Colma, approximately just more than a mile from the Serra establishment. He applied to the Board for a license to operate under the name "Duggan's Colma Funeral Shoppe." Serra objected to the Board, arguing that use of the name would be confusing to consumers, given the similarity of the two names and their close proximity. After a public hearing, the Board approved of the name "Colma Funeral Shop"—that is, "Duggan's" had to be omitted from the name.

C. *Federal Trademark Registration*

Several days later, DFS applied to the United States Patent and Trademark Office (PTO) to register "Duggan's" as a federal trademark. William Welch's declaration accompanied the application. Therein he declared that to the best of his knowledge, "no other person, firm, corporation, or association has the right to use the above-identified mark in commerce . . . ."

Initially, the PTO refused to register the mark because the term "is primarily merely a surname." Welch submitted a second declaration asserting that "[s]ome members of the family have left the family business . . .

and use the mark for funeral services without permission from applicant. Those members of the family do not have the right to use the mark within the meaning of the trademark laws. Applicant has the exclusive right to use the mark and has done so for the five years before the date of this application." With that, the PTO registered "Duggan's" as a service mark.

Thereafter, DFS notified Serra of the registrations, demanded that Serra either "take a license to use the trademark or else stop using it" and sent Serra a draft complaint for trademark infringement. Faced with this threat, Serra initiated an administrative proceeding with the PTO to cancel the registration.

D.  *State Court Proceedings*

In May 1997 DFS filed a state action for unfair business practices and injunctive relief. The gist of the complaint was that Serra had wrongfully and unfairly used the name Duggan's since 1962 and committed related acts of false and misleading advertising. Serra asserted a number of affirmative defenses, cross-complained for cancellation of trademark registration and other relief and requested suspension of the PTO cancellation proceeding. That request was granted.

After the trial court denied DFS's motion for preliminary injunction,[3] DFS removed the cause to federal court. DFS also filed a "counterclaim" in federal court for trademark infringement. However, Serra succeeded in remanding the entire case back to state court. Still hankering for a federal forum, DFS tried to certify the remand question for appeal to the Ninth Circuit. Ruling on DFS's motion for certification, the federal district court held that "allowing DFS to appeal this issue serves no useful purpose because the state court has jurisdiction to decide the trademark claims as well as the other claims at issue."

Serra moved for summary judgment. The trial court issued a tentative ruling granting the motion on the trademark cancellation claim but denying it as to the unfair competition claims because triable issues of fact remained concerning the question of "steer[age]" of DFS's customers by Serra. Ultimately the court granted summary judgment on all claims, ruling that (1) DFS failed to exhaust its administrative remedies; (2) Serra's affirmative defenses of laches, acquiescence and estoppel barred DFS's claims; and (3)

---

[3]The denial was conditional in that the court ruled it would issue a limited injunction if the parties could "agree on the phone book problems and possible disclaimers of affiliation . . . ."

the trademark must be cancelled as a matter of law because of fraud. As well, the court granted Serra's motion for attorney fees, finding that the action was "exceptional" within the meaning of 15 United States Code section 1117(a). It awarded Serra $329,202.50 in fees plus $14,432 in costs. This appeal followed.

## II.  DISCUSSION

### A.  *Substantive Claims*

#### 1.  *Standard of Review*

Summary judgment in favor of a defendant is proper if (1) defendant shows that one or more elements of a cause of action cannot be established or there is a complete defense to it; and (2) plaintiff fails to meet his or her burden of showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (*o*)(2).) Because a summary judgment motion raises only questions of law, we independently review the trial court's grant of summary judgment. (*Rosse v. DeSoto Cab C*o. (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

#### 2.  *Trademark Cancellation*

##### a.  *Jurisdiction*

Throughout these proceedings, DFS has contended that the superior court has no jurisdiction to cancel a federal trademark registration. This is not so.

The Lanham Act itself grants federal courts original jurisdiction over all claims arising under the act. (15 U.S.C. § 1121(a).) As well, 28 United States Code section 1338(a) provides that federal district courts have original jurisdiction over all claims arising under any act of Congress pertaining to patents, copyrights, plant variety protection and trademark cases. But their jurisdiction is exclusive only with respect to patent, plant variety protection and copyright claims. (*Ibid.*) Thus, in cases arising under the Lanham Act, the jurisdiction of federal and state courts is concurrent. (*Aquatherm Industries, Inc. v. Fla. Power & Light Co.* (11th Cir. 1996) 84 F.3d 1388, 1394; *Scientific Technology, Inc. v. Stanford Telecommunications, Inc.* (N.D.Cal. 1988) 9 U.S.P.Q.2d (BNA) 1566, 1567 ["These two statutes indicate that Congress did not intend to limit adjudication of trademark actions under the Lanham Act to federal courts"]; 5 McCarthy on Trademarks and Unfair Competition (4th ed. 1997) § 32:1 (hereafter McCarthy).)

DFS contends nonetheless that state courts do not have jurisdiction to cancel a federally registered trademark, citing 15 United States Code section 1121(b) and *Application of Marriott Corporation* (C.C.P.A. 1975) 517 F.2d 1364.[4] Section 1121(b) of that code provides in part: "No State or other jurisdiction of the United States or any political subdivision or any agency thereof may require alteration of a registered mark . . . ." This statute is aimed at restraining the exercise of police power to alter a registered mark. (*Blockbuster Videos, Inc. v. City of Tempe* (9th Cir. 1998) 141 F.3d 1295, 1296 [municipality may not enforce zoning regulations that require alteration of a registered mark].) It is not a restraint on state court jurisdiction. In the words of Professor McCarthy: "[S]tate courts possess powers under the [Lanham] Act identical to those of the federal courts." (5 McCarthy, *supra*, § 32:1, fn. omitted.) Indeed, state courts can pass upon the validity of federal trademark registration. (*Brown & Bigelow v. Remembrance Advertising Prod.* (1952) 279 A.D. 410 [110 N.Y.S.2d 441], affd. 304 N.Y. 909 [110 N.E.2d 736].)

   b.   *Cancellation Was Proper*

   ■   Under the Lanham Act, "the court may . . . order the cancelation of registrations . . . ." (15 U.S.C. § 1119.) A party may seek cancellation of a registered trademark on the basis of fraud by proving (1) a false misrepresentation of material fact; (2) the registrant's knowledge or belief that the representation is false; (3) intent to induce reliance; and (4) reasonable reliance thereon. (*Robi v. Five Platters, Inc.* (9th Cir. 1990) 918 F.2d 1439, 1444.)

   With respect to the cancellation claim, the trial court found undisputed that DFS never used the name Duggan's alone as a mark; the use of the name Duggan's was not exclusive; and DFS's president, William Welch, was aware of these facts when he declared to the contrary before the PTO in order to obtain the federal registration. The court concluded that these were material misrepresentations mandating cancellation of the trademark.

   In his applicant declaration, submitted under penalty of perjury, Welch declared that the mark "Duggan's" had been used exclusively by the Duggan

---

[4]DFS relies on the following language: "[N]o state court has jurisdiction to determine the right to federal registration under the Lanham Act. § 21 (15 USC 1071) . . . ." (*Application of Marriott Corporation, supra,* 517 F.2d at p. 1369, fn. 8.) *Marriott* is inapposite. First, 15 United States Code section 1071 is not at issue here. It has to do with appeals from decisions made by the commissioner or the Trademark Trial and Appeal Board, specifying that a dissatisfied party may appeal to the United States Court of Appeals for the Federal Circuit or file a civil action. Second, *Marriott* is wrong. Nothing in 15 United States Code section 1071 indicates that the civil action must be brought only in federal court. (*Scientific Technology, Inc. v. Stanford Telecommunications, Inc., supra,* 9 U.S.P.Q.2d at pp. 1567-1568.)

family since 1929; some family members had left the family business and were using the mark without permission; and DFS had the exclusive right to use the mark.

In deposition Welch admitted that he never used the word "Duggan's" alone as a mark in advertising. Moreover, besides Serra, Welch testified to two independent funeral service businesses in the Bay Area that used the name Duggan's in their business—Duggan's Mission Chapel (in Sonoma, started by William Duggan) and Duggan's Carlmont Chapel (in San Mateo County, started by another family member). As established by O'Gara's letters, DFS impliedly consented to Serra's use of the name Duggan's. As well, DFS consented to use by Duggan's Mission Chapel and although Welch objected orally to use by Duggan's Carlmont Chapel, he never pursued the matter. Thus, DFS did not have the exclusive right to use the mark and permission had been given to others.

DFS suggests that Welch's declarations were made in good faith but again, this is argument only. The above undisputed facts are to the contrary.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . .

B., C.*

. . . . . . . . . . . . . . . . . . . . . . .

We affirm the judgment and award of fees, with the above modification.

Hanlon, P. J., and Sepulveda, J., concurred.

A petition for a rehearing was denied May 24, 2000, and appellant's petition for review by the Supreme Court was denied July 19, 2000.

---

*See footnote, *ante*, page 151.