[No. D051391. Fourth Dist., Div. One. Oct. 9, 2008.]

PACIFIC SUNWEAR OF CALIFORNIA, INC., Plaintiff and Appellant, v. OLAES ENTERPRISES, INC., Defendant and Respondent.

468

## COUNSEL

Gordon & Rees, Matthew D. Murphey, Kimberly D. Howatt and Steven Lawson for Plaintiff and Appellant.

Law Offices of Darren J. Quinn, Darren J. Quinn and Alexander E. Papaefthimiou for Defendant and Respondent.

Opinion

IRION, J.—In this appeal, clothing retailer Pacific Sunwear of California, Inc. (PacSun), appeals a trial court order granting summary judgment in favor of Olaes Enterprises, Inc. (Olaes), in PacSun's breach of warranty lawsuit. The lawsuit alleges that Olaes breached the warranty contained in section 2312, subdivision (3) of the California Uniform Commercial Code (hereafter section 2312(3)), which requires certain sellers to warrant that their goods are "free of the rightful claim of any third person by way of infringement or the like." (§ 2312(3).) PacSun seeks monetary damages for the alleged breach to compensate it for litigation expenses incurred in defending against a third party trademark infringement lawsuit that arose out of PacSun's sale of T-shirts purchased from Olaes.

The trial court granted Olaes's motion for summary judgment on the ground that the third party claim did not constitute a "rightful claim" of infringement under the California Uniform Commercial Code and thus did not breach the section 2312(3) warranty. The trial court reached this conclusion, as a matter of law, after analyzing a federal district court's ruling on the third party's request for a preliminary injunction in the underlying trademark infringement litigation. In particular, the trial court highlighted the district court's finding that there was not a " 'likelihood of confusion' " between the allegedly infringing T-shirts and the third party's trademark.

As we shall explain, the trial court's interpretation of rightful claim was erroneous. A rightful claim under section 2312(3) is not synonymous with a claim that ultimately will prove successful in litigation. Rather, as we will define for the first time under California law, a rightful claim under section 2312(3) is a nonfrivolous claim of infringement that has any significant and adverse effect on the buyer's ability to make use of the purchased goods. Under this standard, the trial court could not properly conclude on the evidence before it, as a matter of law, that the third party infringement claim against PacSun was not a rightful claim, and consequently we reverse.

FACTS

Olaes supplies PacSun with T-shirts imprinted with graphic designs for resale in PacSun stores. In 2004 PacSun purchased 16,000 "Hot Sauce Monkey" T-shirts from Olaes. These T-shirts depict, on the front, a monkey drinking a bottle of hot sauce and, on the back, the same monkey in apparent pain, expelling fire. Centered underneath each of the images is a two-word caption: on the front, the phrase "Smile Now"; on the back, the phrase "Cry Later."

## A. *The Hawaii Litigation*

On May 14, 2004, clothing maker Smile Now Cry Later Inc. (SNCL) filed a complaint in the United States District Court for the District of Hawaii against another clothing maker, Yakira, LLC (also known as "Ecko"), as well as a subsidiary of PacSun, Pacific Sunwear Stores Corp. (also known as "d.e.m.o."), for trademark infringement. The complaint alleged that Ecko had manufactured shirts that infringed on SNCL's trademark, and d.e.m.o. sold the shirts in its retail stores. SNCL included in its complaint a copy of its registered trademark, which depicts two masks in the style of ancient Greek theater masks. One of the masks is smiling and the other is crying. Underneath the corresponding masks are the words "Smile Now" and "Cry Later." SNCL's complaint also contained an example of the allegedly infringing design manufactured by Ecko.

On January 12, 2005, SNCL amended its complaint in the Hawaii litigation to include PacSun as a defendant and to add an allegation that the Hot Sauce Monkey T-shirts violated SNCL's trademark. In the ensuing litigation, PacSun, with cooperation from Olaes, defended itself, denying that the Hot Sauce Monkey T-shirts infringed SNCL's trademark.

In the course of the trademark litigation, SNCL filed a motion for a preliminary injunction barring further sales of the Hot Sauce Monkey T-shirts. The district court issued a 20-page order denying SNCL's motion. In the order, the federal court analyzed SNCL's trademark infringement claim under an eight-factor test utilized by the Ninth Circuit to determine likelihood of confusion, " 'i.e., whether the similarity of the marks is likely to confuse customers about the source of the products' "—" '[t]he core element of trademark infringement.' " (*Brookfield Communications v. West Coast* (9th Cir. 1999) 174 F.3d 1036, 1053–1054.) The district court determined that SNCL failed to carry its burden with respect to five of the eight factors, and had not "established a likelihood of confusion" between the Hot Sauce Monkey T-shirts and SNCL's trademark. In June 2005, all parties to the Hawaii litigation entered into a settlement agreement. The settlement was filed under seal.

## B. *The Instant Action*

In May 2006 PacSun filed the instant action in superior court. The complaint alleged a single cause of action: that Olaes breached the statutory warranty that the Hot Sauce Monkey T-shirts were "free of the rightful claim of any third person by way of infringement or the like." (§ 2312(3).) After Olaes answered the complaint, PacSun and Olaes filed cross-motions for summary judgment.

The trial court denied PacSun's summary judgment motion and granted Olaes's summary judgment motion.[1] With respect to Olaes's motion, the court ruled that "SNCL's underlying claims of infringement were not 'rightful claims' under [section] 2312(3) and thus [Olaes] did not breach the warranty provided for under that section." In reaching this conclusion, the court noted that "rightful" was not defined in the California Uniform Commercial Code, and that the parties had failed to present any case law "expressly construing the meaning of that word as it appears in [section] 2312(3)." Consequently, the court examined the "usual and ordinary meaning" of the term "rightful" by reference to various dictionary definitions, such as "valid," "just," "appropriate; fitting; right or proper etc." To determine whether the claim was rightful under these definitions, the court proceeded to review the federal district court's preliminary injunction ruling. Highlighting the fact that the federal district court found that SNCL "failed to meet its burden as to five of the eight factors required to establish a claim of trademark infringement," and that there was not a likelihood of confusion, the trial court concluded "as a matter of law, [that] the underlying claim does not meet the plain meaning of the word 'rightful,' i.e., 'valid'; 'proper'; 'appropriate'; [or] 'just.'" The court also "note[d]" the fact that PacSun continued selling the T-shirts after being put on notice of the infringement claim, suggesting that PacSun itself believed the claim was not "rightful." PacSun appeals.

## DISCUSSION

PacSun contends that the trial court erred in ruling, as a matter of law, that SNCL's trademark infringement claim was not a rightful claim. PacSun argues that, "at the very least," there is a disputed factual issue as to whether the claim is "rightful," precluding summary judgment. We agree.

California Uniform Commercial Code section 2312 states as follows:

"(1) Subject to subdivision (2) there is in a contract for sale a warranty by the seller that

"(a) The title conveyed shall be good, and its transfer rightful; and

"(b) The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

"(2) A warranty under subdivision (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know

---

[1] The denial of PacSun's motion for summary judgment is not before us on this appeal.

that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

"(3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications."

California Uniform Commercial Code section 2312 is identical to section 2-312 of the Uniform Commercial Code, which has been adopted in almost every American jurisdiction. (See U. Com. Code, § 2-312; *East River S.S. Corp. v. Transamerica Delaval* (1986) 476 U.S. 858, 872, fn. 7 [90 L.Ed.2d 865, 106 S.Ct. 2295] [noting that "the Uniform Commercial Code . . . has been adopted by 49 States"]; Hricik, *Remedies of the Infringer: The Use by the Infringer of Implied and Common Law Federal Rights, State Law Claims, and Contract to Shift Liability for Infringement of Patents, Copyrights, and Trademarks* (1997) 28 Tex. Tech L.Rev. 1027, 1065 [recognizing that "section 312(3) of Article 2 of the Uniform Commercial Code" has been "[e]nacted by virtually every state"].) The statutory warranties contained in Uniform Commercial Code section 2-312 are derived from the implied warranty of title that emerged at common law as an "exception[] to the *caveat emptor* doctrine." (See Dudine, *Warranties Against Infringement Under the Uniform Commercial Code* (1964) 36 N.Y. State Bar J. 214, 215.)

At issue in the instant appeal is the applicability of section 2312(3) and, specifically, whether the trial court properly ruled on a motion for summary judgment that the section 2312(3) warranty did not apply because the trademark suit filed by SNCL was not a rightful claim of infringement.

In interpreting section 2312(3), the parties suggest widely divergent definitions of the phrase "rightful claim." Olaes suggests that a rightful claim is a valid claim, i.e., one that has proven, or will likely prove, meritorious in litigation. (See Dudine, *Warranties Against Infringement Under the Uniform Commercial Code, supra*, 36 N.Y. State Bar J. at p. 219 ["A rightful claim is one where the buyer or seller reasonably believes that a third party's infringement charge would probably be upheld by the Courts"].) By contrast, PacSun argues that any claim "in the form of litigation" constitutes a rightful claim regardless of its underlying merits. We believe the correct interpretation of section 2312(3) lies somewhere in between these positions. (Cf. *84 Lumber Co. v. MRK Technologies, Ltd.* (W.D.Pa. 2001) 145 F.Supp.2d 675, 680 ["If claims of patent infringement are seen as marks on a continuum, whatever a 'rightful claim' is would fall somewhere between purely frivolous claims, at one end, and claims where liability has been proven, at the other."].)

Despite the widespread adoption of subdivision (3) of section 2-312 of the Uniform Commercial Code, there are few reported cases discussing the provision and little precedent regarding the definition of a rightful claim. (See *Phoenix Solutions, Inc. v. Sony Electronics, Inc.* (N.D.Cal., Dec. 11, 2007, No. 07-02112) 2007 U.S.Dist. Lexis 91017; *Bonneau Co. v. AG Industries, Inc.* (5th Cir. 1997) 116 F.3d 155, 157 [recognizing that there is "very little case law regarding this specific section"].) There are no California cases on point. Thus we take up the question on a relatively clean slate, applying the familiar rules of statutory interpretation.

■ The role of the courts in construing a statute is to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*People v. Wright* (2006) 40 Cal.4th 81, 92 [51 Cal.Rptr.3d 80, 146 P.3d 531].) " 'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' " (*Ibid.*) " '[I]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' " (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

The phrase "rightful claim" is not defined in the California Uniform Commercial Code, and is not a legal term of art that can be interpreted by reference to existing California statutory or case law. In addition, due to the multitude of definitions of "rightful" in common usage (as noted by the trial court), the term is ambiguous with respect to its application in the current context. Thus, the phrase is reasonably susceptible to more than one interpretation, and we must turn to " ' "extrinsic aids" ' " to discern its meaning. (*People v. Jefferson, supra*, 21 Cal.4th at p. 94.)

■ The primary extrinsic aid for interpretation of the Uniform Commercial Code is the official commentary to that code. While the statutory text, of course, controls over any inconsistent commentary, courts regularly look to the official commentary to determine the meaning of ambiguous statutory provisions. (See, e.g., *AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 638 [49 Cal.Rptr.3d 493]; *Wilson v. Brawn of California, Inc.* (2005) 132 Cal.App.4th 549, 555 [33 Cal.Rptr.3d 769];

*Cohen v. Disner* (1995) 36 Cal.App.4th 855, 862 [42 Cal.Rptr.2d 782]; see also *Jefferson v. Jones* (1979) 286 Md. 544 [408 A.2d 1036, 1039] [recognizing that the U. Com. Code's official comments are "a useful aid for determining the purpose of its provisions" and, while "not controlling authority," constitute "an excellent place to begin a search for the legislature's intent when it adopted the Code"].)

■ As explained below, the commentary to Uniform Commercial Code section 2-312[2] demonstrates that, contrary to Olaes's position, the term "rightful claim" as used in the statute is intended to broadly encompass any nonfrivolous claim of infringement that significantly interferes with the buyer's use of a purchased good.

Official comment 3 to Uniform Commercial Code section 2-312 states that subdivision (1) creates a duty on the part of the seller "to see that *no claim of infringement* of a patent or trade-mark by a third party will *mar* the buyer's title." (U. Com. Code com., par. 3, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2312, p. 290, italics added.) The commentary further explains that the subdivision's purpose is to "reject[]" case law that had required a buyer to be "expressly prevented from using the goods" by an infringement claim prior to obtaining relief. (U. Com. Code com., par. 4, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290.) The commentary thus explains that under the Uniform Commercial Code, " 'eviction'[3] is not a necessary condition to the buyer's remedy since the buyer's remedy *arises immediately upon receipt of notice of infringement.*" (U. Com. Code com., par. 4, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290, italics added.) The comment quoted above, by stating that the seller warrants there will be "no claim of infringement," and by asserting that the buyer's remedy arises immediately upon notice of infringement (i.e., well before resolution of the claim), strongly suggests that any significant claim of infringement—whether or not ultimately meritorious—triggers the section 2312(3) warranty.[4] (U. Com.

---

[2] As we have noted, California adopted section 2-312 of the Uniform Commercial Code without change.

[3] The use of the term "eviction" in this context refers to case law of ancient lineage that required a buyer to demonstrate that he or she had been precluded from using the purchased goods as a prerequisite to a warranty claim. (See generally 1 Hawkland, Uniform Commercial Code Series (2007) § 2-312:4; see, e.g., *The Electron* (1896) 74 F. 689, 697 ["If the purchaser is prevented from the use of the purchased property,—in other words, if he is evicted,—he has a defense to an action for the purchase price."].)

[4] At the time of the drafting of the Uniform Commercial Code, the drafters were presented with a request from the New York Patent Law Association "that the phrase 'rightful claim' " be replaced with " 'valid claim.' " (1 Rep. of the N.Y. Law Revision Com. for 1955: Study of the Uniform Commercial Code (1998) p. 738.) The request was supported by the argument that the phrase " 'rightful claim' " had "the effect of broadening the scope of the warranty" and

Code com., par. 3, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290.)

■ The parameters of the section 2312(3) warranty are further clarified by the official commentary to an analogous warranty in subdivision (1) of Uniform Commercial Code section 2-312.[5] The subdivision (1) warranty requires a seller to warrant that title to a purchased item "shall be good, and its transfer rightful." (U. Com. Code, § 2-312, subd. (1)(a); see Cal. U. Com. Code, § 2312, subd. (1)(a).) The accompanying commentary states that the requirement that the transfer be "rightful" obligates the seller to ensure that the goods are free from any significant claims against title—not simply those claims that ultimately will prove successful in litigation. (U. Com. Code com., par. 1, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290.) ■ The Uniform Commercial Code section 2-312, subdivision (1) warranty thus "makes provision for a buyer's basic needs in respect to a title which he in good faith expects to acquire by his purchase, namely, that he receive a good, clean title transferred to him also in a rightful manner so that he will not *be exposed to a lawsuit* in order to protect it." (U. Com. Code com., par. 1, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290, italics added.)

In line with the above commentary, the majority view of the courts is that the Uniform Commercial Code section 2-312, subdivision (1) warranty is not inapplicable simply because the underlying claim against the buyer's title ultimately lacks merit. (See *Maroone Chevrolet, Inc. v. Nordstrom* (Fla.Dist.Ct.App. 1991) 587 So.2d 514, 518 (*Maroone Chevrolet*) [agreeing with the "majority view" that "there need not be an actual encumbrance on the purchaser's title or actual disturbance of possession to permit a purchaser to recover for a breach of warranty of title," and explaining that this view " 'is supported by the policy that a purchaser should not be required to engage in a contest over the validity of his ownership' "]; *Frank Arnold Contractors v. Vilsmeier Auction Co.* (3d Cir. 1986) 806 F.2d 462, 464–465 (*Frank Arnold Contractors*) [noting that the "majority" of courts hold that "there need not be an actual encumbrance on the purchaser's title to permit

encompassed even claims that were "only *prima facie* valid." (*Ibid.*) The drafters did not adopt this proposed change, however, suggesting that a broad interpretation of the term "rightful" was intended.

[5] The phrase "rightful claim" first appears in the 1949 draft of the Uniform Commercial Code under subdivision (1)(b) of section 2-312. (U. Com. Code (Official Draft 1949) § 2-312, subd. (1)(b), p. 86.) Uniform Commercial Code section 2-312, as then written, did not include any language specific to infringement claims. The rightful claim language was later deleted from subdivision (1)(b) and immediately reintroduced in the context of infringement claims, when subdivision (3) was added to section 2-312 of the Uniform Commercial Code in a supplement to the official draft in 1955. (U. Com. Code (Official Draft 1952) Supp. No. 1 (Jan. 1955) § 2-312, subd. (3), pp. 8–9.)

recovery for a breach of warranty of title," but rather "a 'substantial shadow' on the purchaser's title" is sufficient, and concluding that "the majority approach is well-reasoned and . . . firmly grounded in the policy of the statute"].) This broad interpretation, in the commentary and the case law, of Uniform Commercial Code section 2-312, subdivision (1)'s warranty of a good and rightful transfer of title, carries great weight in our interpretation of the analogous warranty in section 2312(3). (*People v. Jefferson, supra*, 21 Cal.4th at p. 94 [in interpreting ambiguous statute, courts should "adopt[] the construction that best harmonizes the statute internally and with related statutes"]; cf. 1 Hawkland, Uniform Commercial Code Series, *supra*, § 2-312:4, p. 2-507 [arguing that the U. Com. Code, § 2-312, subd. (3) warranty is violated when a buyer discovers that "reasonable grounds for [a] claim of infringement exist," and noting that "[t]his viewpoint is consistent with the general thrust of section 2-312(1) dealing with the warranty of good title, rightful transfer, and no encumbrance, and with the idea that disturbance of quiet possession ('eviction') is not required as a basis for an action for warranty against infringement"]; Clark & Smith, The Law of Product Warranties (2002) § 3:18, p. 3-48 ["Just as a cloud on title is enough to trigger liability under § 2-312(1), so is notice of infringement enough to justify suit under § 2-312(3)."].)[6]

There are also strong public policy arguments that support interpreting the section 2312(3) warranty to encompass all nonfrivolous claims of infringement, and not solely those claims that ultimately prove (or are expected to prove) successful in litigation. (*People v. Jefferson, supra*, 21 Cal.4th at p. 94 [directing courts to look to the " ' "public policy" ' " underlying a statutory enactment in discerning meaning of ambiguous text].)

---

[6] Olaes and PacSun both point to Uniform Commercial Code section 2-607 as providing support for their positions. In fact, however, that section sheds little light on the inquiry. Uniform Commercial Code section 2-607 primarily concerns the notice that must be made by the buyer to the seller regarding infringement claims. It states that with respect to a "claim" for infringement against the buyer, where "the buyer is sued as a result of such a breach," the buyer "must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation." (U. Com. Code, § 2-607, subd. (3)(b); see also Cal. U. Com. Code, § 2607, subd. (3)(b) [same].) The section also states that "[w]here the buyer is sued" for an infringement claim "for which his or her seller is answerable over," the "original seller may demand in writing that the buyer turn over to the seller control of the litigation." (Cal. U. Com. Code, § 2607, subd. (5)(b).) Olaes contends that the phrases, "answerable over" and "liability established by the litigation" suggest that only claims pursued to a successful verdict trigger the warranty. PacSun argues that the language's equation of a "claim" and "sued" with a breach of the warranty supports its contention that virtually any litigation triggers the warranty. While we can see the merits of *both* arguments, we believe that Uniform Commercial Code section 2-607 ultimately sheds no light on the question presented in this appeal. Uniform Commercial Code section 2-607 is directed at notice, tender of defense, and damages, not the substance of the Uniform Commercial Code section 2-312(3) warranty.

■ As between a buyer and "a seller who is a merchant regularly dealing in goods of the kind" (§ 2312(3)), the burden of infringement claims is most sensibly placed on the seller who will generally have superior knowledge as to the existence of such claims, and a stronger incentive to seek out and resolve potential infringement claims prior to sale. (See 1 Hawkland, Uniform Commercial Code Series, *supra*, § 2-312:4, p. 2-507 [emphasizing that the warranty extends only to merchants who deal in the type of goods sold "because they are the ones who know, or should know, of possible patent or trademark violations"]; cf. Dudine, *Warranties Against Infringement Under the Uniform Commercial Code, supra*, 36 N.Y. State Bar J. at p. 215 [recognizing that the infringement warranty is ultimately derived from the "presumption of law that a seller has superior knowledge of the title to his own goods," while also pointing out that U. Com. Code, § 2-312, subd. (3) extends this presumption even to cases "where it is sheer imagination to presume that the seller has [superior] knowledge"].) The seller's incentive to reduce or eliminate prospective claims of infringement is undermined, however, if the section 2312(3) warranty applies only to meritorious claims, leaving the risk of closely contested, but ultimately unsuccessful, infringement claims to be borne by unsuspecting purchasers.

■ A warranty against all nonfrivolous claims of infringement also accords with California Uniform Commercial Code section 2312's status as an implied warranty, present in every sale involving a merchant who regularly deals in the goods sold, that can be altered by the contracting parties' agreement. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 127 [61 Cal.Rptr.3d 221] (*Linear Technology Corp.*) [noting that § 2312(3) "expressly recognizes an exception for agreements to the contrary"].)[7] In the most common scenario—i.e., the situation best suited to a generally applicable implied warranty—buyers will be unwilling to make a purchase unless assured by the seller that the goods are not subject to *any* nonfrivolous infringement claims. Average buyers simply do not anticipate

---

[7] At issue in *Linear Technology Corp.* was the trial court's subject matter jurisdiction to resolve a suit under section 2312(3) in light of the federal courts' exclusive jurisdiction over patent cases. (*Linear Technology Corp., supra*, 152 Cal.App.4th at pp. 123, 127; see 28 U.S.C. § 1338(a).) The Sixth District concluded that the trial court possessed jurisdiction to hear the claim, particularly as the parties had modified section 2312(3)'s implied warranty to include an express warranty for "*any* claim of infringement." (*Linear Technology*, at p. 127.)

The issue of subject matter jurisdiction is not raised in the instant appeal. This is because federal law grants exclusive jurisdiction to the federal courts to resolve patent claims (the underlying infringement claim in *Linear Technology Corp., supra*, 152 Cal.App.4th 115), but allows state courts concurrent jurisdiction over trademark claims. (28 U.S.C. 1338(a) [granting federal district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks," and stating that "[s]uch jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases"]; *Duggan's Funeral Service, Inc. v. Duggan's Serra Mortuary, Inc.* (2000) 80 Cal.App.4th 151, 157 [95 Cal.Rptr.2d 253].)

that their title to and use of purchased goods will be contingent upon their successful litigation of a subsequent infringement action. (See *Chemtron, Inc. v. Aqua Products, Inc.* (E.D.Va. 1993) 830 F.Supp. 314, 315 [explaining that "[w]hen the goods are delivered and title is transferred, the warranty against infringement serves to provide assurances that the goods sold to the buyer are not subject to third party claims"]; Ezer, *The Impact of the Uniform Commercial Code on the California Law of Sales Warranties* (1961) 8 UCLA L.Rev. 281, 310 ["It certainly comports with common understanding that the buyer does not want an infringement lawsuit to accompany his purchase."].) Section 2312(3) best reflects this reality by allowing a buyer to rely on the seller's status as "a merchant regularly dealing in [the] goods" sold (*ibid.*), as demonstrating that the purchase price represents the *total* cost required for a buyer to use the purchased goods—i.e., that the buyer's ultimate use of the goods does not include a hidden litigation cost. (See *Maroone Chevrolet, supra*, 587 So.2d at p. 518 [recognizing public policy " 'that a purchaser should not be required to engage in a contest over the validity of his ownership' "]; *Frank Arnold Contractors, supra*, 806 F.2d at p. 464 [same]; 2A Lawrence's Anderson on the Uniform Commercial Code (3d ed. rev. 2008) § 2-312:127, p. 642 [explaining that "[t]he justification for this rule is that the buyer of goods that are warranted for title has a right to rely on the fact that there will be no need later to have to contest ownership"].) If the purchased goods are not, in fact, available for use without an initial investment of buyer-financed litigation expenses, this should be made explicit as between the parties. The parties can, then, modify the implied warranty and/or factor the anticipated litigation costs (discounted by the likelihood of their arising) into the purchase price.

█ The policy rationales discussed above are also consistent with the most unusual aspect of the section 2312(3) warranty: the creation of a risk-shifting alternative warranty that runs, in certain circumstances, from buyer to seller. The code provides an exception to the section 2312(3) warranty when the buyer "furnishes specifications to the seller" for the purchased goods, and an infringement "claim" arises out of the seller's compliance with the specifications. (Cal. U. Com. Code, § 2312, subd. (3).) In such circumstances, the buyer must "hold the seller harmless" against any rightful infringement claim. (*Ibid.*)

This exception to the seller's warranty for claims arising out of buyer-furnished specifications comports with the policy rationales we have described above. When an infringement claim arises from the seller's compliance with buyer-furnished specifications, it is the buyer who is properly required to ensure that the specifications (which will generally not have been known to or desired by the seller prior to sale) will not generate a rightful infringement claim. If the buyer fails to do so, he or she must bear the costs of defending a

resulting claim. On the other hand, when the buyer does not provide specifications but purchases goods "as is" from an experienced seller, the seller properly bears responsibility for defending later (nonfrivolous) claims that the goods infringe on a third party's intellectual property rights.

The alternate warranties contained in section 2312(3) also set up a clean dividing line delineating which party (buyer or seller) will be required to bear the burden of infringement claims arising from the use of purchased goods. This dividing line provides a degree of certainty to parties entering into a commercial transaction as to who will bear the costs of potential third party infringement claims. It would disrupt this finely crafted statutory allocation of risk, with little apparent benefit, to refocus the inquiry, as Olaes requests, on the ultimate validity of the potential third party infringement claim— something that will be difficult to discern at the time of sale (particularly for the buyer).

Finally, if the section 2312(3) warranty were determined by reference to the ultimate success or failure of third party infringement litigation, the buyer would be placed in an untenable position when a third party sues, contending infringement of a trademark, patent or copyright. Only by *losing* the lawsuit—or helping the third party claimant to maintain an appearance of success prior to settlement—would the buyer preserve the right to recover from the seller under Uniform Commercial Code section 2-312.[8] This would create a perverse incentive that would undermine the adversary process—a public policy outcome unlikely to have been intended by California Uniform Commercial Code section 2312's drafters. (Cf. *Cover v. Hydramatic Packing Co., Inc.* (Fed. Cir. 1996) 83 F.3d 1390, 1394 [stating that a construction of " 'rightful claim' " as synonymous with actual infringement "would not lead to judicious public policy inasmuch as parties would eschew settlement and be forced to go to trial to discern whether a 'rightful claim' exists under federal patent law"], quoted in *Linear Technology Corp., supra*, 152 Cal.App.4th at p. 128.)[9]

---

[8] The Uniform Commercial Code contemplates a potential resolution to this dilemma by providing a mechanism for the seller to assume control of the defense to the third party claim. (See Cal. U. Com. Code, § 2607.) The buyer cannot, however, force the seller to do so. (See Dudine, *Warranties Against Infringement Under the Uniform Commercial Code*, supra, 36 N.Y. State Bar J. at p. 219 [emphasizing buyer's dilemma despite provisions of U. Com. Code, § 2-607].)

[9] The difficult nature of the buyer's position—if section 2312(3) is understood as only applying to valid claims—is apparent in this very lawsuit. Olaes contends on appeal that it is "*dispositive*" that PacSun has previously asserted that SNCL's claims in the Hawaii litigation are without merit. (Italics added.) Essentially, Olaes contends that PacSun was required to admit the validity of SNCL's claims against it in order to preserve a warranty claim against Olaes.

■ In sum, it is clear from the official commentary, the statutory scheme and the public policy rationales underlying California Uniform Commercial Code section 2312, that the section 2312(3) warranty covers a broad scope of infringement claims and is not limited to claims that ultimately will prove successful in litigation. (See 1 Hawkland, Uniform Commercial Code Series, *supra*, § 2-312:4, p. 2-507 ["The warranty of no infringement is breached if the buyer is reasonably exposed to the patent or trademark claims of third persons, even though his use or quiet enjoyment of the goods is not disturbed"].) As we have explained, the warranty against rightful claims applies to all claims of infringement that have any significant and adverse effect on the buyer's ability to make use of the purchased goods, excepting only frivolous claims that are completely devoid of merit. This exception for frivolous claims comports with the Uniform Commercial Code commentary and policy rationales discussed above, while giving necessary effect to the statutory qualifier "rightful." The seller's warranty under California Uniform Commercial Code section 2312 is broad, but neither the statutory text, nor the policy rationales, can support extension of the seller's warranty to even frivolous claims of infringement. As reflected in the statutory text, a seller cannot reasonably be required to seek out and resolve even meritless claims of infringement prior to sale.

Our analysis is consonant with that of the only other court that has squarely addressed the question of how to define a rightful claim under section 2312(3). The Appellate Division of the Superior Court of New Jersey, interpreting the identical rightful claim provision under New Jersey law, held that a rightful claim of infringement, like claims against title under Uniform Commercial Code section 2-312, subdivision (1), is a claim that "cast[s] a 'substantial shadow' on the buyer's ability to make use of the goods in question." (*Sun Coast Merchandise Corp. v. Myron Corp.* (App.Div. 2007) 393 N.J.Super. 55 [922 A.2d 782, 796–797] (*Sun Coast*).) The New Jersey court explained that under this standard, it was not necessary for the infringement claim to ultimately prove successful, or even for it to blossom into litigation. Rather, a buyer must establish only "that the infringement claim is of a substantial nature that is reasonably likely to subject the buyer to litigation, and has a significant and adverse effect on the buyer's ability to make use of the goods in question." (*Id.*, 922 A.2d at p. 797; see also *Johnson Electric North America v. Mabuchi Motor* (S.D.N.Y. 2000) 98 F.Supp.2d 480, 489

With respect to Olaes's further contention, echoed by the trial court, that it is also significant that PacSun "continued to sell the T-Shirts" during the Hawaii litigation, we emphasize that the relevance of this factor is specifically refuted by the official commentary to the Uniform Commercial Code, which states that eviction (i.e., prevention of use) is not required to establish a breach of the section 2312(3) warranty. (U. Com. Code com., par. 4, reprinted at 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2312, p. 290.)

[noting that "[c]ourts have interpreted [§] 2-312(3) to entitle the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement"].)

 While our analysis is analogous to that of the *Sun Coast* court, we believe some modification of the standard set forth in *Sun Coast* is necessary. First, the phrase "claim . . . of a substantial nature" (*Sun Coast, supra,* 922 A.2d at p. 797) should be understood to mean a nonfrivolous claim. Unlike "substantial," "nonfrivolous" is a term that can be readily applied to the evaluation of legal claims and is thus more conducive to concrete application. (See, e.g., Code Civ. Proc., § 128.5, subd. (b)(2) [defining " '[f]rivolous' " in the context of attorney or party sanctions to mean, inter alia, "totally and completely without merit"]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr.508, 646 P.2d 179] [defining "frivolous appeals" as those that "indisputably ha[ve] no merit"].) Second, contrary to the potential implication of the *Sun Coast* standard quoted above, the existence of litigation is neither necessary nor, in itself, sufficient to establish that a claim is "rightful." A claim of infringement may be rightful under section 2312(3) whether or not it is ultimately pursued in litigation. For example, a claim may be deemed rightful if the buyer, prior to any litigation, voluntarily ceases to use purchased goods due to a third party claim of infringement. And, contrary to PacSun's suggestion, the mere filing of litigation will not necessarily establish that a claim is "rightful."[10] As the courts are well aware, a third party may file a complaint and pursue litigation despite the absence of *any* merit to the underlying contention. (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 575 [21 Cal.Rptr.3d 331, 101 P.3d 140] [recognizing that some lawsuits result in settlement even though they achieve that result " ' "by dint of nuisance and threat of expense" ' " rather than " ' "by threat of victory" ' "].) Consequently, while we are generally in accord with the discussion in *Sun Coast*, we set forth a different formulation of the applicable standard for purposes of California law. A rightful claim under section 2312(3) is a nonfrivolous claim of infringement that has any significant and adverse effect, through the prospect of litigation or otherwise, on the buyer's ability to make use of the purchased goods.

Applying the above standard to the facts of the instant case, we conclude that the trial court erred in granting Olaes's motion for summary judgment.

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that

---

[10] Indeed, were we to agree that the warranty is triggered by the filing of litigation, without any evaluative inquiry into the merits of the underlying claim itself, we would effectively be reading the term "rightful" out of the statute.

the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) In the instant case, Olaes did not meet this threshold.

■■■ The evidence presented on Olaes's summary judgment motion demonstrated that there was at least a "triable issue of material fact" as to whether SNCL's infringement claim was a rightful claim.[11] (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) SNCL based its claim on a registered trademark that bore at least some semblance to the Hot Sauce Monkey T-shirts. Further, the claim quickly blossomed into full-blown litigation in federal district court, causing PacSun to appear, answer the complaint and litigate a preliminary injunction motion. The case continued after the Hawaii court denied the request for an injunction (in a 20-page order), ultimately resulting in a settlement. (Cf. *Linear Technology Corp., supra*, 152 Cal.App.4th at p. 130 [recognizing settlement of a claim as potential factor to be considered in determining whether the claim is rightful, and quoting discussion in indemnity case that a " 'settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable . . .' "].) While these factors may, or may not, ultimately prove dispositive, they create, at the least, a triable question as to whether SNCL's claim was a rightful claim, i.e., whether the claim constituted a nonfrivolous claim of infringement that had a significant and adverse effect on PacSun's ability to make use of the purchased goods. On this record, the trial court could not properly resolve that question, as a matter of law, in favor of Olaes. (Code Civ. Proc., § 437c, subd. (c).)

Olaes next contends that even if we disagree with the trial court's interpretation of rightful claim, we can still affirm the summary judgment ruling on an alternate ground not ruled on by the trial court: that Olaes's breach of the warranty was not the proximate cause of PacSun's damages. (See *Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 57 [72 Cal.Rptr.3d 354] [appellate court "may affirm an order granting summary judgment on a ground not relied on by the trial court, if the parties have been afforded the opportunity to brief the issue"], citing Code Civ. Proc., § 437c, subd. (m)(2).) We disagree.

Olaes does not dispute that PacSun would be entitled to its litigation expenses in the underlying infringement litigation (the primary relief sought by PacSun) if the fees were "proximately caused" by Olaes's breach of the warranty. (See *De La Hoya v. Slim's Gun Shop* (1978) 80 Cal.App.3d Supp. 6, 10–12 [146 Cal.Rptr. 68] [discussing circumstances under which party may

---

[11] Neither party contends that the question of whether a claim is rightful is a question of law that must be always resolved by the trial court.

recover attorney fees in action for "breach of warranty of title"].) Olaes argues, however, that the warranty breach cannot be considered the proximate cause of the damages in the instant case because PacSun "clearly knew of the purported defect in the Hot Sauce [Monkey] T-shirts . . . before it ordered [them] and well before" it received notice of SNCL's claim. (See U. Com. Code com., par. 5, reprinted at 23A pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2715, p. 120 [explaining that if the buyer "did in fact discover the defect" in goods that underlies a claim for consequential damages "prior to his use, the injury would not proximately result from the breach of warranty"].)

 Again, the evidence presented on Olaes's summary judgment motion did not meet the threshold for a ruling in Olaes's favor. (Code Civ. Proc., § 437c, subd. (c).) "Proximate cause . . . is generally a question of fact for the jury . . ." (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 520 [150 Cal.Rptr. 1, 585 P.2d 851]) that cannot be resolved on a motion for summary judgment "unless from the facts only one reasonable conclusion could be drawn." (*Koepke v. Loo* (1993) 18 Cal.App.4th 1444, 1450 [23 Cal.Rptr.2d 34].) The meager facts adduced by Olaes on appeal do not support a ruling, as a matter of law, on the question of proximate cause. Olaes points out only that SNCL sued PacSun's subsidiary, d.e.m.o., and clothing maker Ecko prior to PacSun's purchase of the Hot Sauce Monkey T-shirts, and that the lawsuit included an allegation that SNCL possessed the "Smile Now Cry Later" trademark. Olaes fails to establish, and PacSun disputes, however, (i) that the lawsuit against PacSun's subsidiary necessarily demonstrated PacSun's knowledge of SNCL's trademark; (ii) that the lawsuit against PacSun's subsidiary was sufficiently similar to the instant infringement claim that it provided the requisite notice of the "defect" in the goods offered for sale by Olaes; and (iii) that PacSun's knowledge of SNCL's trademark immunizes Olaes, as a matter of law, from *any* damages based on a breach of the section 2312(3) warranty. In short, we cannot conclude that the evidence offered by Olaes leads to "only one reasonable conclusion" (*Koepke*, at p. 1450), excluding the breach of the section 2312(3) warranty as the proximate cause of PacSun's damages. Consequently, we cannot affirm the trial court's ruling on this alternative ground.[12]

---

[12] During the pendency of this appeal, Olaes filed a motion to "strike or disregard" portions of PacSun's appellate brief and eight-volume appendix on the generic ground that the identified portions are unnecessary "for proper consideration of the issues." (Cal. Rules of Court, rule 8.124(b)(2)(A).) Olaes also contends that PacSun's appendix erroneously includes court filings that were not pertinent to the summary judgment ruling at issue in this appeal. Olaes fails to identify any argument made by PacSun that would be impacted were we to grant the motion. We deny the motion.

## DISPOSITION

The judgment is reversed.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied October 28, 2008, and respondent's petition for review by the Supreme Court was denied January 14, 2009, S168425. George, C. J., did not participate therein.