Filed 10/27/25  Heritage Two LLC v. Bristol Farms CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HERITAGE TWO LLC,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>BRISTOL FARMS,<br><br>　　　　Defendant and Respondent. | B334776 (consolid. w/ B338125 & B339665)<br><br>(Los Angeles County Super. Ct. No. 23STCP01057) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Brown Rudnick, Ronald Rus, Joel S. Miliband, and Shoshana B. Kaiser for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Carl L. Grumer, and Patrice S. Ruane for Defendant and Respondent.

_____

In March 2023, an American Arbitration Association (AAA) arbitrator issued a final award in favor of respondent Bristol Farms and against appellant Heritage Two LLC. In November 2023, the trial court denied Heritage's petition to vacate the award, confirming it instead. In May 2024, the trial court granted Bristol Farms's motion for $87,872.75 in attorneys' fees and entered an amended judgment awarding those fees. In this consolidated appeal, Heritage argues the court erred in: (1) refusing to vacate the arbitration award because the Arbitrator exceeded his powers both in determining he had the power to decide whether Bristol Farms's dispute was arbitrable, and in deciding it was arbitrable; and (2) finding both that Bristol Farms was entitled to attorneys' fees and that the amount of fees requested was reasonable.

After independently examining the arbitration clause in the parties' agreements, we conclude Bristol Farms's dispute was arbitrable. Additionally, the Arbitrator's final award made no mention of his determination that he had the power to decide whether the dispute was arbitrable. Thus, we need not decide whether the Arbitrator exceeded his powers in deciding he had the power to determine arbitrability because, even if the Arbitrator erred in doing so, that error can be corrected without affecting the merits of the award. Furthermore, we find the trial court did not err in finding that Bristol Farms was entitled to attorneys' fees, and that the amount requested was reasonable. We therefore affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## A.   *The Leases*

In 1995, Jeffrey B. Panosian and Claire B. Panosian on the one hand, and Lazy Acres Market, Inc. on the other hand, entered into two lease agreements (the Leases) through which Lazy Acres would remodel existing buildings on two parcels of land to create a single building that Lazy Acres would operate as a supermarket.

The Leases expired on May 31, 2006, but Lazy Acres could extend them through three "Renewal Option Periods": "The First Renewal Option Period shall commence on June 1, 2006 and shall conclude on May 31, 2016. The Second Renewal Option Period shall commence on June 1, 2016 and shall conclude on May 31, 2023. The Third Renewal Option Period shall commence on June 1, 2023 and shall conclude on May 31, 2029." Lazy Acres's right to renew was contingent upon: (a) the Panosians timely receiving "a written request by Lessee to exercise Lessee's option for any single one of the three (3) aforementioned Renewal Option Periods"; and (b) Lazy Acres "be[ing] in full and complete compliance with all of the terms and conditions of this Lease as of the date of receipt of such written request by Lessor."

Both Leases provided that "[a]ny controversy, dispute, or claim not involving a demand for payment of monies and arising out of or relating to this Lease or out of or to a breach by either of the parties hereto of the provisions hereof shall first be submitted to arbitration in accordance with the Rules of the American Arbitration Association, and judgment on the award rendered in

---

[1] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

any such arbitration proceeding may be entered in any court having jurisdiction thereover."

Additionally, the Leases stated that "[a]s it becomes necessary or appropriate to obtain use permits and/ or to obtain plan approvals for the Premises or any part thereof, Lessor agrees, from time to time and upon the request of Lessee, to execute such documents, petitions, applications, and authorizations as may be appropriate or required for the purpose of obtaining such permits and approvals."

Finally, the Leases provided that "[i]n the event that either Lessor or Lessee should institute or bring any action or proceeding against the other (a.) for damages for an alleged breach of any provision of this Lease, (b.) for performance of any obligation in and under this Lease, (c.) to establish, protect, or enforce any right or remedy of either party hereto in and under this Lease, and/or (d.) to recover rents due under this Lease, then in any and all of such aforementioned events that aforementioned party in whose favor judgment is rendered in such action or proceeding shall be entitled to recover from the other of the aforementioned parties as part of such action or proceeding all fees and/or costs incurred by such prevailing party in such action or proceeding including reasonable attorneys' fees and/or court costs which fees and/or costs are fixed by the court rendering such judgment."

## B.    *Heritage Files a Complaint*

In April 2020, the Panosians sued Bristol Farms in Santa Barbara Superior Court.[2]  In August 2020, the Panosians filed a verified first amended complaint (the operative complaint).  The operative complaint alleged that, in 1995, the Panosians entered into two leases with Lazy Acres, through which Lazy Acres leased a structure the Panosians owned in Santa Barbara.  In June 2008, Lazy Acres was "merged into" Bristol Farms, and Bristol Farms became the lessee.  The operative complaint alleged Bristol Farms breached the Leases by: (1) maintaining insurance in the name of "Bristol Farms, Inc." instead of "Bristol Farms"; (2) refusing to name the Panosians as a "Loss Payee" in insurance policies beginning in 2019; (3) maintaining inadequate umbrella insurance coverage; (4) maintaining insurance from a carrier whose rating dropped from "A" to "A-"; (5) obtaining a business license from the City of Santa Barbara in the name of Bristol Farms, Inc. instead of Bristol Farms; and (6) failing to reimburse the Panosians for insurance they claimed they had to obtain when Bristol Farms refused to secure the insurance required by the lease.  Based on these claims, the complaint alleged causes of action for breach of contract and declaratory relief.

---

[2] In an April 2023 declaration submitted on Heritage's behalf, Jeffrey Panosian claimed he was Heritage's managing member and that "[a]fter the commencement of the Santa Barbara Action, the Panosians transferred their interests in the Leases to Heritage."  An October 2022 minute order from the Santa Barbara Superior Court noted that in January 2022, "plaintiff Heritage Two LLC (Heritage) substituted in for original plaintiffs Dr. Jeffrey B. Panosian and Dr. Claire B. Panosian."

5

In February 2021, Bristol Farms answered the complaint.

### C.  *Bristol Farms Demands Arbitration*

On May 20, 2022, Bristol Farms sent written notice to Heritage that it elected "to exercise its option to extend the term of the above-referenced lease for the Third Renewal Option Term."  Heritage rejected the renewal notice, stating:  "Because Bristol Farms is in default of its two leases for the Santa Barbara Lazy Acres Market, your election of the 'Third Renewal Option Period' as therein defined is invalid and of no force or effect. Unless Bristol Farms emerges from default prior to June 1, 2022, those leases will terminate on May 31, 2023."

In June 2022, Bristol Farms filed a demand for arbitration with the AAA, explaining the parties disagreed whether Bristol Farms validly exercised its option for the Third Renewal Option Term and asking for "declaratory relief that it did validly exercise the options and that the Leases remain in effect through May 31, 2029."  Bristol Farms additionally explained that it had asked Heritage to "execute a Master Permit Application" so Bristol Farms could obtain a building permit from the City of Santa Barbara, but Heritage "refused to do so, without cause and in breach of the Lease."  Bristol Farms asked an arbitrator to order Heritage to sign the application.

### D.  *Heritage Objects to Arbitration*

#### 1.  Heritage Objects to AAA

Twelve days after Bristol Farms initiated arbitration proceedings, Heritage filed with AAA a form entitled "Arbitration Answering Statement and Counterclaim or Joinder/Consolidation Request."  Therein, "Heritage ask[ed] that the American

6

Arbitration Association first determine the validity of the following objections (set forth in greater detail below) as a preliminary matter without reaching the merits of matters stated in Claimant's Demand for Arbitration:  [¶ (1)] The Purported Disputes are not Subject to Arbitration[; ¶ (2)] The Arbitrator Lacks Jurisdiction because the Purported Disputes are Already Under Superior Court Jurisdiction[; ¶ (3)] Arbitration Would Impermissibly Split the Cause of Action[; ¶ (4)] Arbitration Would Introduce the Possibility of Conflicting Rulings on a Common Issue of Law or Fact[; ¶ (5)] Bristol Farms Has Waived Arbitration[; ¶ (6)] The Laches Equitable Defense Doctrine Precludes Bristol Farms from Invoking the Arbitration Provisions of its Leases[; ¶ and (7)] Any Arbitration that Could Conceivably Proceed Should be Stayed."

Heritage also asserted counterclaims, "[w]ithout waiving its Objections to Arbitration, and only to the extent of any adverse determination regarding such Objections."  Heritage sought "a declaration that Bristol Farms has not validly elected a Renewal Option Period and that Bristol Farms's Leases expire at the end of May 31, 2023," "monetary damages resulting from its having to obtain and pay for the Additional Insurance," "a determination that Bristol Farms has breached . . . the Leases by proceeding with construction work without first having obtained the required approval and consent of Heritage and without having provided the advance notice and plans required under the Leases" and "damages resulting from Bristol Farms's breach of said Lease provisions," and attorneys' fees and costs.

## 2. Heritage Objects to the Court; the Court Declines to Grant Relief

In August 2022, Heritage filed a motion to enjoin the arbitration, arguing that the arbitration "could yield a judgment in conflict with that of this Court" and that "there is no arbitration agreement applicable to the dispute asserted by Bristol Farms" because "whether Bristol Farms could legitimately exercise [its renewal] options is inseparable from Heritage's demand for monetary reimbursement for costs resulting from Bristol Farms's breach and default."

In September 2022, Heritage notified AAA of its motion to enjoin the arbitration and asked AAA to stay proceedings until the court could rule. AAA stated that, absent a court order or agreement from the parties, AAA would proceed.

On October 20, 2022, Heritage made an ex parte application for a temporary restraining order to enjoin the arbitration. The court granted the application and issued both a temporary restraining order and an order to show cause why a preliminary injunction should not be issued.

On October 31, 2022, the court denied Heritage's motion, dissolved the temporary restraining order, and declined to issue a preliminary injunction. The court found that both the motion to enjoin the arbitration and the request for preliminary injunction "address the same issue and seek the same relief." The court then considered the propriety of a preliminary injunction, finding it was required to consider: (1) whether Heritage would suffer a greater injury if the injunction were erroneously denied or whether Bristol Farms would suffer a greater injury if the injunction were erroneously granted; and (2) was there a reasonable probability that Heritage would succeed in defeating a

8

motion to compel arbitration should Bristol Farms bring one.  In considering these questions, "the court assumes, without deciding, for purposes of this analysis that the declaratory relief aspects of the arbitration sought by Bristol Farms are within the scope of the arbitration provision of the Lease."

The court concluded that Heritage had "shown a sufficient probability of prevailing to support issuance of a preliminary injunction" because the court case would "determine whether there was a breach of the Lease with respect to insurance coverage and consequently whether there remained, and still remains, amounts unpaid relative to Heritage's procurement of duplicate coverage.  In order to reach the issue of whether the no-default condition for exercising the option to extend the Lease term has been met, the arbitrator may need to resolve the issue of whether there is a continuing default arising from the events of this action.  If this court finds that there was a breach and that amounts remain unpaid as a result of that breach, those findings may make the arbitration unnecessary within the meaning of [Code of Civil Procedure] section 1281.2."

However, the court found Bristol Farms would suffer the greater injury should the injunction be erroneously granted because, "[i]f the injunction were erroneously granted, then, at least until disposition of a motion to compel arbitration, Bristol Farms would not be able to litigate the issue of whether its exercise of the option to extend the term of the Lease was effective.  The failure to address this issue leaves both parties uncertain as to whether Bristol Farms would be entitled to remain in the Property after May 31, 2023.  In the context of this Lease, this uncertainty would have serious impacts upon the conduct of Bristol Farms'[s] business and upon Bristol Farms'[s]

9

use of the Property for the remainder of this renewal term of the Lease." Whereas, if the injunction were erroneously denied, the parties would be required to arbitrate and litigate, "with the potential for the arbitration to resolve, indirectly, the issues of this action as well as to expend resources in proceedings in two separate forums."

The court therefore held the balance of the equities favored denying the application for preliminary injunction, reasoning that "[p]rompt resolution of the issue of the validity of the exercise of the renewal option appears as paramount" and "[t]hat issue is not directly present in this action and granting the injunction would impede prompt resolution of that issue." The court added that "[b]ased upon the parties' representations concerning the rules of arbitration, the arbitrator will determine whether the issues in this action may or must be determined to reach a conclusion in the arbitration. Nothing in this ruling should be construed as precluding Heritage from arguing to the arbitrator that the arbitration is improper in whole or in part. At the same time, the issues in this action are not, directly at least, before the arbitrator and so this action will continue unless and until the court orders otherwise."

### 3. Heritage Objects to AAA Again

On November 17, 2022, the Arbitrator held a "First Preliminary Hearing," in which the parties agreed, among other things, that Heritage "has withdrawn its argument that the claim that the Master Permit Claim is not subject to this arbitration but has continued its objection to the arbitrability of the Lease Option Claim." The Arbitrator also concluded that, in the court's October 31, 2022 order, "this arbitrator has been requested to revisit this issue [of whether Bristol Farms's claim

10

about renewing the Leases was arbitrable] if called upon to do so by Respondent" Heritage. Noting Heritage's reliance on *Gilbert Street Developers, LLC v. La Quinta Homes* (2009) 174 Cal.App.4th 1186 (*Gilbert*) "to support its argument that the Arbitrator has no authority to decide whether the Lease Option Claim may be arbitrated in this arbitration and that Claimant must first go to court and obtain a court order compelling arbitration of the Lease Option Claim," the Arbitrator distinguished *Gilbert* "because in this case the Court Order authorizes this arbitration to continue and in the wording quoted in section 2.8 above[,] the Civil Court expects the arbitrator to determine if the Lease Option Claim should be arbitrated if Respondent chooses to raise this objection before the arbitrator."

As to Heritage's counterclaims, Heritage confirmed it was withdrawing its claims for "[m]oney damage for cost to obtain the insurance required by the leases," "[d]iminution in the value of the leased property due to Claimant's defaults," and "[t]he cost to restore the leased properties to their former condition."[3]

---

[3] In December 2022, Heritage filed "Amended Counterclaims" clarifying they sought only (1) "a <u>determination</u> that Bristol Farms breached Paragraphs 7.1 et seq., 9.2, and 24.1 of the Leases by proceeding with construction work (a) without having obtained in advance the required written approval and consent of Heritage, (b) without having provided in advance to Heritage the notice, plans, specifications, and drawings required under the Leases, (c) by not having obtained and provided to Heritage the performance bond required under the Leases, and (d) by having sought and obtained building permits from the City of Santa Barbara that did not bear the Lessor's required signature"; and (2) "a <u>declaration</u> (a) that Bristol Farms did not validly elect to extend the Leases through their Third Renewal
*(Fn. is continued on the next page.)*

11

As to arbitrability, the Arbitrator concluded: "The Lease Option Claim is a demand for declaratory relief. It is not a demand for the payment of money. While further information may be developed during the course of this arbitration, based on the current record the question of whether the insurance obtained by Claimant satisfied the requirements of the Leases is pertinent to resolving this claim. That issue would not require [the] Arbitrator to resolve a demand for the payment of money." While the civil court case contained a claim that Bristol Farms was required to reimburse Heritage for insurance costs, "this issue is only reached if it is determined that the insurance obtained by Claimant did not comply with the requirements of the Leases."

On November 21, 2022, five months after asking the Arbitrator to determine whether Bristol Farms's claims were arbitrable, Heritage filed an objection to the Arbitrator's jurisdiction to determine arbitrability. Heritage argued the "default rule is that a court must determine arbitrability" and that the AAA's rules "in effect when the applicable Leases were signed in 1995 did not grant an arbitrator the authority to determine arbitrability."

---

Option Periods and (b) that the Bristol Farms Leases will accordingly expire on May 31, 2023." In this Amended Counterclaim, Heritage expressly stated it was not "waiving any objections (including objections to any adverse determination either by the Arbitrator or by the Court regarding Heritage's previously stated position that the Arbitrator does not have jurisdiction to adjudicate this dispute and does not have jurisdiction to determine his own jurisdiction under the 1993 version of the AAA Rules)."

12

### 4. Heritage Objects to the Court Again

In December 2022, Heritage filed an ex parte application asking the court to: (a) "confirm[]" the Arbitrator "had and has no jurisdiction to determine arbitrability"; (b) "confirm[]" that the claim presented by Bristol Farms in the Arbitration "does not fall within the scope of the parties' contractual arbitration provisions"; and (c) "enjoin[] the AAA Arbitration." Alternatively, Heritage asked for an order shortening time and expediting a briefing schedule for the court to resolve these issues. In its application, Heritage informed the court that, on November 17, 2022, its counsel reviewed a copy of the AAA rules in effect when the Leases were signed and discovered these rules "did ***not*** grant the Arbitrator jurisdiction to determine arbitrability."[4] Further, Heritage complained the Arbitrator misinterpreted the court's previous order by construing it to authorize the arbitration to continue, and to delegate to the Arbitrator the power to determine whether Bristol Farms's dispute was arbitrable.

Bristol Farms opposed the application, arguing it was "in effect, an untimely reconsideration motion" and pointing out that "in its Answering Statement in the Arbitration, Heritage has expressly consented to the Arbitrator determining the scope of his jurisdiction, and in fact has expressly requested that the Arbitrator decide that issue."

The court denied Heritage's ex parte application. On December 30, 2022, Heritage requested the court dismiss the "Entire action as to Defendant Bristol Farms dba Lazy Acres

---

[4] Heritage admitted it "did not know this when its motion to enjoin arbitration was filed and decided."

13

Market, a California corporation only." The court entered the dismissal that same day.

### E. *The Arbitrator Issues a Final Award*

In March 2023, the Arbitrator issued a final award. The award noted that, although Heritage had been informed of the dates for the arbitration, it "elected not to attend or present arguments or evidence in its defense or with regard to its amended counterclaims made in this case," and that Heritage had confirmed it would "not participate further in the case in its January 24, 2023 correspondence to the AAA."

The award declared Bristol Farms "complied with the requirements for the exercise of the Third Renewal Option and therefore the respective terms of the Leases are extended to May 31, 2029." The Arbitrator rejected the argument that Bristol Farms could not renew the Leases because it was purportedly in default on the Leases. Specifically, the Arbitrator determined: (1) "the Leases do not contain a requirement for 'loss payee' endorsements to be issued in favor of Respondent" and therefore Bristol Farms "is not responsible for reimbursing Respondent for any cost incurred by Respondent in obtaining such additional coverage"; (2) the "Arbitrator finds that the existence of the Bristol Farms, Inc. name on insurance policies was not a default under the Lease" because "the Bristol Farms, Inc. name on the insurance policies was not a bar to the payment of insurance claims"; (3) within days of being notified that its insurance carrier's rating had dropped to A-, Bristol Farms "replaced the carrier with a carrier that had better than an A (Excellent) rating"; and (4) none of the remodeling projects' costs met the threshold set by the Leases requiring notification to Heritage. The Arbitrator concluded Bristol Farms "complied with the

14

requirements for the exercise of the Third Renewal Option and therefore the respective terms of the Lease are extended to and shall expire on May 31, 2029."

The Arbitrator also found Heritage "is required under section 7.4 of the Lease to cooperate with [Bristol Farms] in the filing of the Master Building Permit Application and that includes signing the Master Building Permit Application in the places designated for the property owner's signature." The Arbitrator ordered Heritage "to promptly sign the Master Building Permit Application."

The Arbitrator deemed Bristol Farms to be the prevailing party in the arbitration and ordered that "[t]he administrative fees and expenses of the American Arbitration Association totaling $13,460.00 and the compensation and expenses of the arbitrator totaling $36,527.75 shall be borne by" Heritage.

### F.    *Heritage Petitions to Vacate the Award*

In April 2023, Heritage petitioned the Los Angeles Superior Court to vacate the arbitration award, arguing the Arbitrator lacked "jurisdiction to decide the threshold question of arbitrability and acted in excess of his powers by doing so." Heritage pointed out that, although the current AAA rules permitted the Arbitrator to determine whether a controversy was arbitrable, the version of the rules in effect when the Leases were signed in 1995 did not. Heritage further argued the Arbitrator exceeded his powers by determining whether Bristol Farms validly exercised its option to renew the Leases because that determination required the Arbitrator to decide whether Bristol Farms was in default of the Leases when it attempted to renew them, which in turn required the Arbitrator to determine the validity of Heritage's contention that Bristol Farms owed it

15

money. Heritage concluded these errors could not be corrected without affecting the merits of the award, and therefore the award must be vacated.

Finally, Heritage preemptively argued it had not forfeited its right to raise this argument, contending it "consistently objected to the Arbitration and has more than adequately disclosed and preserved its objections."

Bristol Farms filed a pleading simultaneously opposing Heritage's petition and requesting the court confirm the award. It argued that Heritage had expressly requested the Arbitrator determine his own jurisdiction and could not now complain he did so. It additionally argued it did not matter whether it was the court or Arbitrator who decided the question of arbitrability—if it was the Arbitrator, he had conclusively decided in favor of arbitration; if it was the court, then it should also decide in favor of arbitration because Bristol Farms's claims did not seek monetary relief; either way, the court should confirm the arbitration award.

Heritage filed a pleading simultaneously opposing Bristol Farms's request to confirm the award and replying to Bristol Farms's opposition to Heritage's request to vacate the award. Heritage reiterated its point that the Arbitrator lacked jurisdiction both to determine arbitrability and to hear the arbitration itself. It also objected to Bristol Farms's inclusion of its request to confirm the award in its opposition papers as procedurally improper.

Bristol Farms filed a response, explaining that: (1) Heritage was not permitted to file a reply to Bristol Farms's opposition; and (2) the Code of Civil Procedure expressly

16

permitted Bristol Farms to request confirmation of the award in its opposition to Heritage's petition.

In November 2023, the trial court denied Heritage's petition to vacate the award. The court held that "An arbitrator's decision cannot be reviewed for errors of law or fact. Moncharsh v. Heily & Blase (1992) 3 Cal 4th 1, 16. Even an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review. MONCHARSH at 15; California Code of Civil Procedure 1286.2." The court added that it "cannot review the Ruling from Santa Barbara Court. The Court finds Heritage Two's argument compelling but is not available to the Court." Ten days later, the court entered a judgment confirming the award.

In December 2023, Heritage timely appealed the court's order denying its petition to vacate the award. We assigned this appeal a case number of B334776.

### G.     *Bristol Farms Seeks Attorneys' Fees*

In January 2024, Bristol Farms filed a motion for attorneys' fees, seeking "its reasonable prevailing-party attorneys' fees incurred in connection with litigating Petitioner Heritage Two LLC's ('Heritage') Petition to Vacate Contractual Arbitration Award ('Petition') in the amount of $87,872.75." Bristol Farms argued that section 23.1 "provides that the prevailing party in any dispute under the Leases '***shall be entitled*** to recover . . . reasonable attorneys' fees and/or court costs which fees and/or costs are fixed by the court rendering such judgment.' " Bristol Farms also contended its fees were reasonable.

Heritage opposed the motion, arguing section 23.1 did not provide for fees in this situation and, in any case, the fees Bristol

17

Fees sought were unreasonable. Specifically, Heritage argued the Leases provided for attorneys' fees only under four circumstances, none of which were present: (a) " 'for damages for an alleged breach of any provision of this Lease' "; (b) " 'for performance of any obligation in and under this Lease' "; (c) " 'to establish, protect, or enforce any right or remedy of either party hereto in and under this Lease' "; and (d) " 'to recover rents due under this Lease.' " Heritage also argued the time entries provided by Bristol Farms's attorneys contained "numerous duplicative, vague, or otherwise unreasonable charges."

In its reply, Bristol Farms countered that its request to confirm the award was an attempt to " 'establish, protect, or enforce any right or remedy of either party' under the Leases." Moreover, Bristol Farms contended that, in attempting to vacate the award, Heritage was also seeking " 'to establish, protect, or enforce any right or remedy of either party hereto in and under this Lease . . . ,' " and thus Bristol Farms was also entitled to fees for defeating Heritage's petition. Bristol Farms additionally explained why its fees were reasonable.

In May 2024, the trial court granted Bristol Farms's motion, finding that "Moving party is entitled to fees under Section 23.1 of the operative leases" and "[t]he amount is supported and reasonable." Heritage timely appealed the order granting the motion for attorneys' fees. We assigned this appeal a case number of B338125.

In June 2024, the trial court entered an amended judgment to reflect the granting of the motion for attorneys' fees. Heritage timely appealed the amended judgment. We assigned this appeal a case number of B339665.

18

In June 2024, we granted the parties' joint motion to consolidate the first two appeals. In October 2024, we granted the parties' joint motion to consolidate all three appeals.

## DISCUSSION

### A. *We Need Not Decide Whether the Arbitrator Exceeded His Powers by Deciding Arbitrability*

Heritage and Bristol Farms both agree "parties to an arbitration contract must clearly and unmistakably agree that arbitrators will have power to decide their own jurisdiction; otherwise the question of whether arbitrators have jurisdiction is for the court." (*Gilbert*, *supra*, 174 Cal.App.4th at p. 1190.) They disagree whether such a clear and unmistakable agreement occurred. Heritage contends there was no such agreement because: (1) the Leases incorporated AAA rules, and the AAA rules in effect when the Leases were signed did not provide the Arbitrator would decide arbitrability; and (2) it repeatedly objected that Bristol Farms's claims were not arbitrable. Bristol Farms counters that, in its first pleading to the AAA, Heritage expressly "ask[ed] that the American Arbitration Association first determine the validity of the following objections (set forth in greater detail below) as a preliminary matter without reaching the merits of matters stated in Claimant's Demand for Arbitration: The Purported Disputes are not Subject to Arbitration . . . ."

We need not resolve this disagreement. Assuming, without deciding, that the Arbitrator exceeded his powers when he decided he had jurisdiction to determine whether Bristol Farms's dispute was arbitrable, that question would revert to the courts, and would be a question of law we review de novo. (See, e.g.,

19

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707 ["When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review' "].) As discussed in the next section, we conclude the dispute was arbitrable.

Heritage argues that, under *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44 (*Malek*), if the Arbitrator exceeded his powers in deciding he had jurisdiction to determine arbitrability, the award *must* be vacated. *Malek* is inapposite.

In *Malek*, two years after the court ordered a dispute to arbitration, the plaintiffs filed a motion before the arbitrator seeking to dismiss the arbitration based on new case law. (*Malek, supra,* 121 Cal.App.4th at p. 53.) The defendant opposed the motion "on the grounds that the arbitrator could not, in essence, reverse the trial court's order finding the existence of a valid arbitration agreement and compelling arbitration." (*Ibid.*) The arbitrator granted the motion, stating that although the court had found "there was an arbitration agreement," the arbitrator was still "free to make an appropriate finding" about "the *legal validity* of the arbitration clause." (*Id.* at p. 53, fn. 5.) The arbitrator determined the clause in question was "subject to the same deficiencies as those described" in the new case law presented by the plaintiffs, and "[a]ccordingly, the arbitration cannot proceed, and the matter must be returned to the Court for further proceedings." (*Ibid.*)

The defendant petitioned the court to vacate the arbitrator's order to dismiss "on the grounds that the arbitrator exceeded his powers under the arbitration agreement." (*Malek, supra,* 121 Cal.App.4th at p. 53.) The trial court granted the petition and, on appeal, the plaintiffs argued the court erred in

20

vacating the order because "even if the arbitrator exceeded his authority," the second requirement of Code of Civil Procedure section 1286.2, subdivision (a)(4)—that "the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"—was not met, because the trial court ultimately agreed with the arbitrator that the dispute was not arbitrable under the new case law.[5] (*Id.* at pp. 53–54, 56.) The appellate court disagreed, concluding that "[t]he arbitrator made a determination of arbitrability, which rested solely with the trial court, not the arbitrator. The only way to 'correct' such an award would have been to reverse the arbitrator, which affects the merits of his decision." (*Id.* at p. 57.) In other words, the arbitrator's "award" stated the arbitrator had the power to determine arbitrability when he did not, and the error could not be corrected without affecting the merits of his express finding that he did.

In contrast, the instant award says nothing about the Arbitrator's power to determine arbitrability. Thus, even if the Arbitrator erred in deciding he had the power to determine arbitrability, because we agree the dispute was arbitrable, any error in the determination of whether the arbitrator had the power to decide arbitrability can be corrected without affecting the merits of the award. Therefore, the award need not be vacated under Code of Civil Procedure section 1286.2, subdivision (a), because, regardless of whether the arbitrator exceeded his

---

[5] (Code Civ. Proc., § 1286.2, subd. (a) ["the court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"].)

21

powers, the underlying merits of the award are unaffected by any error.

### B. *Bristol Farms's Dispute Is Arbitrable*

"California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.) Moreover, "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

The Leases provide "[a]ny controversy, dispute, or claim not involving a demand for payment of monies and arising out of or relating to this Lease or out of or to a breach by either of the parties hereto of the provisions hereof shall first be submitted to arbitration . . . ." Bristol Farms's demand for arbitration requested "declaratory relief that it did validly exercise the options and that the Leases remain in effect through May 31, 2029" and an order that Heritage be made to execute a Master Permit Application.

Heritage conceded the dispute regarding the Master Permit Application was arbitrable but contends Bristol Farms's request for declaratory relief was not because "[t]he resolution of the parties' dispute turned on whether Bristol Farms was in default under the Leases when it purported to exercise its option . . . [and] Heritage contended that the purported exercise of the options by Bristol Farms was invalid because Bristol Farms was

22

in monetary default under the Leases—i.e., owed money to Heritage—for the cost of certain insurance which Heritage had paid for in accordance with the provisions of the Leases." Therefore, "the parties' dispute over the validity of Bristol Farms's purported exercise of its options was inseparable from Heritage's claim that it was owed money by Bristol Farms." We disagree.

The arbitration clause does not exempt from arbitration any dispute involving monies or whether one party owes the other money, but only disputes involving a demand for payment of monies. Bristol Farms did not demand Heritage pay it any money. To adjudicate Bristol Farms's dispute, the Arbitrator did not need to decide whether Bristol Farms was required to pay Heritage any monies—only whether Bristol Farms was in default on the Leases. Had the Arbitrator found Bristol Farms was in default, he could have resolved Bristol Farms's dispute by declaring it had not validly exercised its renewal option under the Leases. Indeed, Heritage's argument that "the parties' dispute over the validity of Bristol Farms's purported exercise of its options was inseparable from Heritage's claim that it was owed money by Bristol Farms" is undermined by the fact that Heritage amended its counterclaims to remove its requests for monetary damages, instead asking only for a determination that Bristol Farms breached the Leases and a declaration that Bristol Farms did not validly exercise its renewal option.

Furthermore, Heritage's interpretation of the arbitration clause renders it illusory. As Bristol Farms points out, "any dispute between a lessor and a lessee, at its core, somehow involves the payment of money." Any demand for arbitration Bristol Farms asserted could be met with a defense—meritorious

23

or otherwise—that Bristol Farms owed Heritage money under some provision of the Leases, and thus the dispute was one "involving a demand for payment of monies." Effectively, Heritage's interpretation would permit it to embrace or avoid arbitration as it wished. "[W]e 'must interpret the provisions of a contract to avoid rendering the instrument "illusory." ' " (*State Comp. Ins. Fund v. Department of Ins.* (2023) 96 Cal.App.5th 227, 237.)

### C. *The Court Did Not Err in Awarding Attorneys' Fees*

The Leases provided that "[i]n the event that either Lessor or Lessee should institute or bring any action or proceeding against the other . . . for performance of any obligation in and under this Lease, [or] . . . to establish, protect, or enforce any right or remedy of either party hereto in and under this Lease, . . . then in any and all of such aforementioned events that aforementioned party in whose favor judgment is rendered in such action or proceeding shall be entitled to recover from the other of the aforementioned parties as part of such action or proceeding all fees and/or costs incurred by such prevailing party in such action or proceeding including reasonable attorneys' fees and/or court costs which fees and/or costs are fixed by the court rendering such judgment."

The court found that, under the Leases, Bristol Farms was entitled to the fees it incurred in opposing Heritage's petition to vacate the arbitration award, and that the amount requested—$87,872.75—was "supported and reasonable." Heritage disputes both findings.

24

### 1. Bristol Farms Was Entitled to Attorneys' Fees

"Whether a legal basis exists for an award of attorney fees is a question of law, which the reviewing court examines de novo." (*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1535.) Heritage argues that "[t]he only issues litigated in connection with the Petition were the Arbitrator's jurisdiction to issue the Award and the validity of the Award. The Leases do not authorize recovery of attorneys' fees for litigation over such issues, and the Fee Order must therefore be reversed."

But the Leases provide that the prevailing party in an action "to establish, protect, or enforce any right or remedy of either party hereto in and under this Lease" was entitled to attorneys' fees. Heritage asserted that, under the Leases, it had the right to avoid arbitration for Bristol Farms's dispute because the dispute involved a demand for payment of monies. Heritage petitioned the court to vacate the arbitration award to protect this right. Bristol Farms requested the court to confirm the arbitration award, both to protect its right to arbitration under the Leases and its right to exercise its right to renew the Leases. Therefore, under the Leases, the party that prevailed on both the petition and the request to confirm—Bristol Farms—was entitled to attorneys' fees.

### 2. The Court Did Not Abuse Its Discretion in Finding the Requested Amount Reasonable

"We review a challenge to the amount of a fee award under the abuse of discretion standard." (*Faton v. Ahmedo* (2015) 236 Cal.App.4th 1160, 1173.) " '[A]n experienced trial judge is in a

25

much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances.' " (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509.)

In responding to Heritage's petition, Bristol Farms claimed its attorneys "(1) review[ed], research[ed] and analyz[ed] Heritage's ***more than 500 pages*** filed in support of the Petition; (2) researched, prepared and filed Bristol Farms'[s] opposition to Heritage's Petition; (3) researched, prepared and filed Bristol Farms'[s] opposition to Heritage's unpermitted reply to Bristol Farms'[s] opposition; and (4) attended the hearing on Heritage's Petition on October 30, 2023." The record reflects Bristol Farms's law firm used three attorneys: (1) a litigation partner with over 40 years of experience who billed 51.7 hours at $1,125 per hour; (2) a real estate partner with over 40 years of experience who billed one hour at $1,039.50 per hour; and (3) a litigation associate with over five years of experience who billed 36.5 hours at $785.50 per hour.

Heritage does not argue the attorneys' hourly rates are unreasonable. Rather, it contends the pleadings "involved a single round of briefing on a narrow and straightforward legal question about the Arbitrator's jurisdiction," with no discovery and a single hearing, and "[f]ees exceeding $87,000 cannot be justified on this record." Heritage adds that "the time entries submitted by Bristol Farms reveal unnecessary and duplicative billing by a senior partner . . . and an associate . . . ." But the only example Heritage gives of duplication is that both the senior partner and the associate billed time to travel to the hearing on

26

the petition, "notwithstanding the fact that only one attorney's appearance was reasonably required."

The record reflects the senior partner argued the petition. Therefore, his presence at the hearing was necessary. As this was a significant petition—had Heritage prevailed, nine months of work and Bristol Farms's victory at arbitration would have been undone—we do not conclude the trial court abused its discretion in finding it appropriate for the associate on the case to accompany the partner to court for this hearing. Heritage provides no other examples of why it considers the billing excessive. Heritage has failed to demonstrate why the time spent on opposing its petition was " 'manifestly excessive in the circumstances.' " (*Loeffler v. Medina, supra*, 174 Cal.App.4th at p. 1509.) We therefore conclude the trial court did not abuse its discretion in finding the time spent was "supported and reasonable."

## DISPOSITION

The trial court's order is affirmed. Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.          WEINGART, J.

27